## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**PHILLIP WASHINGTON,**
        **Petitioner,**

**v.**                                            **Case No. 1:18cv001-MW/CAS**

**MARK S. INCH. Secretary,**
**Florida Department of Corrections,**
        **Respondent.**
_____/

## REPORT AND RECOMMENDATION

On December 22, 2017, Petitioner Phillip Washington, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.   ECF No. 1.   On January 16, 2018, he filed an amended § 2254 petition.   ECF No. 5.   On October 29, 2018, Respondent filed an answer and exhibits.   ECF No. 17.   Petitioner filed a reply.   ECF No. 24.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).   After consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.   *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.   For the reasons stated herein, the pleadings and attachments before the Court show Petitioner is not entitled to federal habeas relief, and the amended § 2254 petition should be denied.

## Background and Procedural History

On June 27, 2011, by fourth amended information filed in Alachua County Circuit Court case number 01-2010-CF-002583-A/B, the State of Florida charged Petitioner Phillip Washington with six counts in connection with events that occurred on or about June 30, 2010:   (1) attempted first degree murder (victim: Meena R. Narielwala) while carrying and discharging a firearm, contrary to sections 782.04(1)(a), 775.087(2)(a), and 777.04(1), Florida Statutes; (2) attempted first degree murder (victim: Rajendrakumar Narielwala) while carrying and discharging a firearm, contrary to sections 782.04(1)(a) and 777.04(1), Florida Statutes; (3) attempted felony murder (victim: Meena R. Narielwala) while carrying and discharging a firearm, contrary to sections 782.0051(1) and 775.087(2)(a)2., Florida Statutes; (4) attempted felony murder (victim: Rajendrakumar Narielwala) while carrying and discharging a firearm, contrary to sections 782.0051(1) and 775.087(2)(a)2., Florida Statutes; (5) attempt to commit robbery while armed with a firearm, in violation of sections 812.13(2)(a), 775.087(2)(a), 777.04(4)(d), Florida Statutes; and (6) actual possession of a firearm during the commission of an offense,

Case No. 1:18cv001-MW/CAS

contrary to sections 790.23(1) and 775.087(2), Florida Statutes.   Ex. A at

32-34.[1]   Washington proceeded to a jury trial on August 18 and 19, 2011,

during which several witnesses testified.   Exs. B-F.   Washington did not

testify during the trial.   Ex. F at 447-48.   The jury returned a verdict finding

him guilty of the lesser included offense of attempted second degree

murder on both Counts 1 and 2, and guilty as charged on Counts 3, 4, and

5.   Ex. A at 65-68; Ex. F at 541-45.

At a hearing held August 25, 2011, the judge adjudicated Washington

guilty and sentenced him to a total of sixty (60) years in prison.   Ex. C at

229.   In specifically pronouncing the sentence, however, the judge

imposed, on Counts 3 and 4, consecutive minimum mandatory terms of

twenty (20) years in prison, as well as a concurrent minimum mandatory

term of twenty (20) years in prison on Count 5, and then indicated "[s]o

that's a total of 60 years as a minimum mandatory."   *Id*.   The judge

dismissed Counts 1 and 2 based on the prohibition against double

jeopardy.   *Id*. at 226.   Count 6 was nolle prossed.   *See id*. at 226.

---

[1] Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 17.

The judge entered a written judgment and sentence the same day.

Ex. A at 72-80.   The written sentence reflected the imposition of 20-year

prison terms on each of Counts 3 and 4, to run consecutively, as well as a

20-year prison term on Count 5, to run concurrent with the sentence on

Count 4.   *Id*. at 73-77.   On the Rule 3.992(b) Supplemental Criminal

Punishment Code Scoresheet, the judge indicated the total sentence

imposed as 60 years.   *Id*. at 85.

In an order rendered September 12, 2011, the court *sua sponte*

determined the written sentence did not accurately reflect the sentence

imposed.   *Id*. at 91-92.   The judge explained, "It was the intent of this

Court, as reflected in the record, to impose a total sentence of 60 years

imprisonment."   *Id*. at 91.   Accordingly, the judge wanted "to clarify the

sentence which was imposed and to correct the written sentence" and

directed:

> **The Clerk of Court shall amend the sentence on
> Count V in the above-captioned case, *nunc pro tunc*
> August 25, 2011, by amending the sentence to reflect that
> i[t] runs <u>consecutive</u> to the sentence imposed on Count IV.
> The sentence shall remain the same in all other respects.**

*Id*. at 91-92.   The amended sentence was entered September 19, 2011,

nunc pro tunc August 25, 2011.   *Id*. at 97-103.

Washington appealed his judgment and sentence to the First District Court of Appeal (First DCA), assigned case number 1D11-5025.   *See* Exs. I (Initial Brief), J (Answer Brief), K (Reply Brief).   On August 29, 2013, the First DCA per curiam affirmed the case without a written opinion.   Ex. L; Washington v. State, 119 So. 3d 1253 (Fla. 1st DCA 2013) (table).

While the appeal was pending, Washington, through counsel, filed a Motion to Correct Sentence pursuant to Florida Rule of Criminal Procedure 3.800(b)(2).   Ex. H at 1-5.   In this motion, Washington argued the trial court, without notice to the parties and after he had begun serving his sentence, had amended the judgment and sentence to reflect that the sentence on Count V was to run consecutively to the sentence on Count IV.   *Id*. at 2.   Washington argued the court had acted in violation of the double jeopardy provisions of the U.S. and Florida Constitutions, specifically citing Ashley v. State, 850 So. 2d 1265 (Fla. 2003).   *Id*. at 2-3. By order rendered May 22, 2012, the state trial court denied Washington's motion to correct sentence.   *Id*. at 10-12.

On August 27, 2014, Washington filed a motion for post-conviction

relief pursuant to Florida Rule of Criminal Procedure 3.850.   Ex. N at 1-33.

By order rendered March 14, 2014, the state post-conviction trial court

summarily denied relief.   *Id*. at 37-48 (exclusive of attachments).

Washington appealed to the First DCA, assigned case number 1D16-1629,

and he did not file a brief.   Ex. N at 199-200; Ex. O.   The First DCA issued

an order pursuant to <u>Toler v. State</u>, 493 So. 2d 489 (Fla. 1st DCA 1986),

directing the State to show cause why the summary denial of the second

ground should not be reversed.   Ex. P.   The State filed a response.   Ex.

Q.   On October 4, 2016, the First DCA issued an opinion affirming in part,

reversing in part, and remanding the case for further proceedings,

specifically the denial of Ground 2(D) and part of Ground 2(E).   Ex. R;

<u>Washington v. State</u>, 200 So. 3d 1287 (Fla. 1st DCA 2016).

On remand, the state post-conviction trial court again summarily

denied relief in an order rendered November 1, 2016.   Ex. S at 214-18.

Washington appealed to the First DCA, assigned case number 1D16-5335,

and he did not file a brief.   *Id*. at 262, 263-64; Ex. T.   On June 5, 2017, the

First DCA per curiam affirmed the case without a written opinion.   Ex. T;

<u>Washington v. State</u>, 231 So. 3d 1239 (Fla. 1st DCA 2017).   The mandate

issued July 5, 2017.   Ex. T.

In the meantime, on February 28, 2017, Washington filed a Motion for

Resentencing.   Ex. U at 25-27.   The state court considered the motion as

one filed pursuant to Florida Rule of Criminal Procedure 3.800(a) and

denied it by order rendered March 16, 2017.   *Id*. at 38-40.   Washington

appealed to the First DCA, assigned case number 1D17-1889.   *Id*. at 62;

Ex. V.   On September 25, 2017, the First DCA per curiam affirmed the

case without a written opinion.   Ex. V; <u>Washington v. State</u>, 234 So. 3d

669 (Fla. 1st DCA 2017).   The mandate issued October 23, 2017.   Ex. V.

As indicated above, on December 22, 2017, Washington filed a

§ 2254 petition in this Court.   ECF No. 1.   He subsequently filed an

amended petition.   ECF No. 5.   He raises seven grounds, including four

alleging ineffective assistance of counsel (IAC):

    (1) **Trial Court Error – Confrontation/Due Process**:
"Washington was denied his right of confrontation and due
process under the 6th amendment to the U.S. Constitution
by failing to provide a constitutionally adequate interpreter
and interpretation of the Hindu victims."   *Id*. at 3.

    (2) **Trial Court Error – Double Jeopardy**:   "Washington's right
to protection from double jeopardy under the 6th
Amendment of the U.S. Constitution was violated when the
trial court sentenced him."   *Id*. at 4.

(3) **IAC – Double Jeopardy**:   "Washington was denied his rights to effective assistance of counsel as guaranteed under the 6th and 14th Amendments to the U.S. Constitution when counsel failed to strike the information based on double jeopardy violations."   *Id.* at 5.

(4) **IAC – Cumulative**:   "Washington was denied his right to effective assistance of counsel as guaranteed under the 6th and 14th amendments to the U.S. constitution based on cumulative effect of counsel deficient performances."   *Id.* at 6.

(5) **IAC – Prosecutorial Misconduct**:   "Washington was denied his right to effective assistance of counsel as guaranteed under the 6th and 14th Amendments to the U.S. Constitution when counsel neither made objections and/or moved for mistrial based on prosecutorial misconduct."   *Id.* at 8.

(6) **IAC – Double Jeopardy**:   "Washington was denied his right to effective assistance of counsel as guaranteed under the 6th and 14th Amendments to the U.S. Constitution when at sentencing counsel failed to move the court for mistrial upon discovering double jeopardy violations."   *Id.* at 9.

(7) **Trial Court Error – Jury Instruction**:   "Washington was denied due process rights under the 6th Amendment to the U.S. Constitution when the trial court failed to instruct the jury of an essential element of attempted felony murder."   *Id.* at 11.

Respondent filed an answer, with exhibits.   ECF No. 17.   Washington has filed a reply.   ECF No. 24.

Case No. 1:18cv001-MW/CAS

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody.    Section 2254(d)

provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).    *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).    "This is

a 'difficult to meet' and 'highly deferential standard for evaluating state-

court rulings, which demands that state-court decisions be given the benefit

of the doubt.'"    Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562

U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

This Court's review "is limited to the record that was before the state court

that adjudicated the claim on the merits." *Id*.

For claims of ineffective assistance of counsel (IAC), the United

States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.   This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.   Second,
> the defendant must show that the deficient performance
> prejudiced the defense.   This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).   To demonstrate

ineffectiveness, a "defendant must show that counsel's performance fell

below an objective standard of reasonableness." *Id.* at 688.   To

demonstrate prejudice, a defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id.* at 694.   "A reasonable

probability is a probability sufficient to undermine confidence in the

outcome." *Id.*   For this Court's purposes, importantly, "[t]he question 'is

not whether a federal court believes the state court's determination' under

the Strickland standard 'was incorrect but whether that determination was

unreasonable – a substantially higher threshold.'"    <u>Knowles v. Mirzayance</u>,

556 U.S. 111, 123 (2009) (quoting <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473

(2007)).    "And, because the <u>Strickland</u> standard is a general standard, a

state court has even more latitude to reasonably determine that a

defendant has not satisfied that standard."    *Id.*    It is a "doubly deferential

judicial review that applies to a <u>Strickland</u> claim evaluated under the

§ 2254(d)(1) standard."    *Id.*

### <u>Ground 1</u>:    Trial Court Error – Confrontation/Due Process

In his first ground, Petitioner Washington asserts the state trial court

denied his right of confrontation and due process by not providing "a

constitutionally adequate interpreter and interpretation of the Hindu

victims."    ECF No. 1 at 3.    In particular, Washington asserts "[t]he

interpreter was not sworn, nor were their qualifications established on the

record" and "[a]t trial an issue arose because of difficulties in translating

each of the victims testimony."    *Id*.    Washington further asserts "[t]he

translation was not being translated word for word" and "the court failed to

read any of the required jury instructions regarding in court translations,

thus allowing unsworn testimony through the interpreter and failed to insure

that the proceedings were properly translated."    *Id*.    Washington also

asserts, "Defense counsel failed to object to the courts mistake and failed to object to any issues surrounding the interpreter." *Id*.; *see* ECF No. 24 at 2-3 (presenting, in reply, issue as one alleging IAC).

To the extent that Washington asserts a claim of trial court error, he exhausted his state court remedies by presenting this claim as the first point in his direct appeal.   Ex. I at ii, 22-32; *see* ECF No. 17 at 17.   On appeal, the First DCA affirmed without a written opinion.   The state court's ruling is entitled to AEDPA deference and review is limited to the record before the state court.   *See* 28 U.S.C. § 2254(d); Cullen, 563 U.S. at 187-88; Richter, 562 U.S. at 99-103; Wright, 278 F.3d at 1255.

To the extent that Washington asserts a claim of ineffective assistance of trial counsel for not objecting to the court's procedure or issues involving the interpreter, he did not exhaust such claim as he did not raise it in state court.   *See* Ex. N at 1-33.   Accordingly, he is procedurally barred from pursuing this IAC claim in federal habeas review.   *See* 28 U.S.C. § 2254(b)(1)(A); *see, e.g.*, O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (providing that, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review

process"); <u>McNair v. Campbell</u>, 416 F.3d 1291, 1302 (11th Cir. 2005)

(explaining exhaustion requirement: "[T]o ensure that state courts have the

first opportunity to hear all claims, federal courts have required a state

prisoner to present the state courts with the same claim he urges upon the

federal courts."); <u>Smith v. Jones</u>, 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]f

the petitioner has failed to exhaust state remedies that are no longer

available, that failure is a procedural default which will bar federal habeas

relief, unless either the cause and prejudice or the fundamental miscarriage

of justice exception is applicable.").   Washington has made no showing of

cause and prejudice, or demonstrated a fundamental miscarriage of justice,

to excuse the procedural default.   *See* ECF Nos. 5, 24.

A review of the record supports the state court's ruling affirming the

appeal.   In particular, the trial transcript reflects that, on the morning of

trial, the prosecutor informed the judge about the interpreter:

> Your Honor, there is an interpreter here for the Nariawalas.
> They do have an understanding of English, but I don't know,
> given some of the more complicated legal language . . .

Ex. D at 7.   The judge swore in the interpreter and instructed her:

> THE COURT:   Who's our interpreter?
>
> Good morning.

MS. ROSIELLO:   Good morning, your Honor.

THE COURT:   Would you raise your right hand, please?

(WHEREUPON, the witness was duly sworn to translate.)

THE WITNESS:   I will.

THE COURT:   Thank you.   And what's your name, please?

THE WITNESS:   Margret Rosiello.   R-O-S-I-E-L-L-O.   And that's Margret with one A.   Thank you.

THE COURT:   Thank you.   So if you will simultaneously translate for the alleged victims in the case while the Court gives them an instruction?

THE WITNESS:   I intend to do that, but they have requested that – They can speak English a little bit, so they would rather have me interpret when they can't understand and they need the information –

THE COURT:   Okay.

THE WITNESS:   -- and not constantly, but just when they can't understand.

THE COURT:   Who are the victims in the case?

MR. URRA [prosecutor]:   It's Meena and Rajendrakumar Narielwala, your Honor.

THE COURT:   I certainly respect your request to let the interpreter know when you can't understand something

Much of what we do here is outside of the normal daily things that you would be doing.   My concern is that you may not fully understand what the Court is saying, and yet the

Court's going to hold you to what the Court says.

So, at least for this part of it, I'm going to ask the interpreter to interpret, and that way we'll be very sure that you understand what's happening.

*Id*. at 7-8.   The judge then instructed that the rule had been invoked requiring witnesses to remain outside the courtroom until called to testify. *Id*. at 9.

Thus, contrary to Washington's assertion, the trial court did swear in the interpreter to translate for the victims.   *See* §§ 90.606(1)(a) ("When a judge determines that a witness cannot hear or understand the English language, or cannot express himself or herself in English sufficiently to be understood, an interpreter who is duly qualified to interpret for the witness shall be sworn to do so."), (2) ("A person who serves in the role of interpreter or translator in any action or proceeding is subject to all the provisions of this chapter relating to witnesses."), (3) ("An interpreter shall take an oath that he or she will make a true interpretation of the questions asked and he answers given and that the interpreter will make a true translation into English of any writing which he or she is required by his or her duties to decipher or translate."), Fla. Stat. (2010).   Although the transcript does not reflect the specific oath taken by the interpreter, at no

point did anyone raise any objection to the oath, the interpreter, her

qualifications, or the procedure.    Florida case law provides that a trial

court's failure to swear in an interpreter pursuant to section 90.606, Florida

Statutes, does not constitute fundamental error.    *See, e.g.*, Obando v.

State, 988 So. 2d 87 (Fla. 4th DCA 2008); Fernandez v. State, 786 So. 2d

38 (Fla. 3d DCA 2001); Rodriguez v. State, 664 So. 2d 1077 (Fla. 3d DCA

1995).    Moreover, "[a]ny violations of state law in connection with the

interpretation of the proceedings are matters for state courts."    Clervil v.

McNeil, No. 08-20144-CIV, 2008 WL 4753575 at *12 (S.D. Fla. Oct. 28,

2008) (order adopting report and recommendation to deny § 2254 petition,

which included finding that "petitioner's allegations concerning the

interpreters' failure to take the required oaths at best states a state law

claim not cognizable in federal habeas").    It does not appear that the U.S.

Supreme Court has published an opinion addressing the issue presented in

this ground.    *See* Kitchen v. Tucker, No. 3:10cv237-LC/CJK, 2012 WL

7051038 at *12 (N.D. Fla. Sept. 20, 2012) (Order and Report and

Recommendation providing, in pertinent part, "The Supreme Court has not

published an opinion addressing an assertion of a due process violation

arising from a trial court's selection of a court interpreter (i.e., a trial court's

appointment of an unqualified interpreter), or a court-appointed interpreter's

translation of a witnesses' examination during a criminal trial.").

  In addition, the transcript reflects the trial judge's repeated attempts

to insure translations were done where needed and the proceedings ran as

smoothly as possible.    For instance, just before the victims testified during

the trial, the following transpired on the record:

> THE COURT:   The other issue – Is the victim next?
>
> MR. URRA:   Yes, your Honor.
>
> THE COURT:   What the Court is going to ask, not only for –
> because I'm concerned that they may think they understand
> something when, in fact, they don't, but for the court reporter's
> benefit as well, I'm going to ask that all answers and questions
> be interpreted.   I think it would just make it flow much more
> smoothly.
>
> MR. URRA:   I'll inform them, your Honor, if I can just go out
> there and tell them and then we're ready to two.
>
> THE COURT:   Yes.   And in the meantime I'm going to bring
> the jury out.

*Id*. at 67-68.   The judge instructed the jury about the interpreter:

> THE COURT:   I think we'll just tell the jury what we're doing
> here.
>
>   This is our next witness.   This lady is the interpreter.
> Her name is Miss Rosiello, and she will be interpreting for you.
> So the witness will testify.   She will interpret that answer for
> you, and she will also be interpreting the questions from the

State.

> The witness actually understands some English, perhaps all, but the Court has asked that we interpret everything, just to make sure that we're clear on everything.   So just to explain that procedure.

*Id*. at 69; *see id*. at 71.   Each victim, originally from India, then testified.

*Id*. at 70-105 (Rajendrakumar Narielwala); 107-19 (Meena Narielwala).

Although the transcript reflects some issues with the procedure used,

particularly during the testimony of Mr. Narielwala, nothing indicates a

serious problem with the translations themselves.   Because he could

understand and speak some English, Mr. Narielwala frequently answered

the questions in English.   In particular, a few minutes into Mr. Narielwala's

testimony, after he and the interpreter were both answering the questions

asked by the prosecutor, the following occurred on the record:

> THE COURT:   This is not working, is it?   Perhaps we'll try it this way.
>
> Why don't we just have you interpret every question? Then if you can answer in English, go ahead.   If not, let the interpreter answer for you.
>
> INTERPRETER ROSIELLO:   I was going to say, he's not going to be able to do that.   But just listen to my – I am answering whatever – even if he answers in English, I'm answering.
>
> THE COURT REPORTER:   If I understand him, I have to write them both.

THE COURT:   If he answers in English, then don't try to interpret his answer.

INTERPRETER ROSIELLO:   Oh, okay.   Fine.

THE COURT:   But every question, I would like for you to interpret, just to make sure we're clear on what's being asked.

INTERPRETER ROSIELLO:   Okay, I will do that.

THE COURT:   If he's unable to answer in English, answer in your native language and you can interpret it.

Let's try that and see if that works.

*Id*. at 73-74.   Mr. Narielwala's testimony continued for a few more minutes, with both him and the interpreter answering the questions posed by the prosecutor, and then the following occurred:

THE COURT:   What I'm most interested in is you translating the questions, to make sure that he understands the questions.

INTERPRETER ROSIELLO:   Okay.   Okay.

THE COURT:   Then if he – So if you'll wait until she's given you the question, then if you respond in English, you don't need to do that.   That's fine.   But he needs to respond –

INTERPRETER ROSIELLO:   If you don't understand his answer, I will translate it for you.

MR. URRA:   And, Mr. Narielwala, I'm going to remind, you wait to answer the question, even if you think you understand it, until she translates it.   Okay?

THE WITNESS:   Okay.

*Id*. at 81.   After direct examination concluded, defense counsel cross-examined Mr. Narielwala.   *Id*. at 96-105.   Mrs. Narielwala testified next, answering questions by the prosecutor with the aid of an interpreter, *id*. at 107-18; defense counsel cross-examined her, *id*. at 118-19; and no issues with the interpreter arose during her testimony.

Based on the foregoing, Petitioner Washington has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2); *see also* <u>Kitchen</u>, 2012 WL 7051038 at *12 ("Given the lack of Supreme Court precedent that 'squarely address[es]' the constitutional implications of a court-appointed interpreter's translation during trial proceedings under the circumstances presented in this case, petitioner's claim fails to make the required showing that the state courts either acted contrary to 'clearly established' federal law or unreasonably applied 'clearly established' federal law.").   Accordingly, this ground should be denied.

### <u>Ground 2</u>:   **Trial Court Error – Double Jeopardy**

In his second ground, Petitioner Washington asserts the trial court

violated his right to double jeopardy protection in sentencing him.   ECF

No. 5 at 4.   In particular, Washington states, he was "[a]djudicated guilty of

count 3 and sentenced to 20 years in F.D.O.C. as a minimum mandatory

with credit for 418 days; adjudicated guilty of count 4 and sentenced to 20

years minimum mandatory running consecutive to count 3; and adjudicated

guilty of count 5 and sentenced to 20 years minimum mandatory running

concurrent to count 4."   *Id*.   He further states, "On September 12, 2011

the court, sua-sponte, changed [his] sentence without notice or hearing to

him; increasing his sentence to reflect a March 4, 2068 release date,"

rather than the previously set release date of May 1, 2049.   *Id*.

As Respondent indicates, Washington exhausted his state court

remedies by presenting this claim as the second point in his direct appeal.

Ex. I at ii, 32-34; *see* ECF No. 17 at 24.   On appeal, the First DCA affirmed

without a written opinion.   The state court's ruling is entitled to deference

and review is limited to the record before the state court.   *See* 28 U.S.C.

§ 2254(d); Cullen, 563 U.S. at 187-88; Richter, 562 U.S. at 99-103; Wright,

278 F.3d at 1255.

The record supports the state court ruling.   In particular, the

transcript of the sentencing hearing reflects the judge orally imposed a total

prison sentence of sixty (60) years:

> THE COURT:   Okay.   Mr. Washington, the jury having found you guilty as to Counts III, IV, and V, the Court does adjudicate you to be guilty, sentencing you on Count III to 20 years in the Department of Corrections as a minimum mandatory; that's day-for-day, pursuant to the 10-20-Life Statute, with credit for 418 days that you've served.
>
> As to Count IV, the Court adjudicates you, sentencing you to 20 years in the Department of Corrections as a minimum mandatory; that sentence to run consecutive to Count III.
>
> As to Count V, the Court adjudicates you guilty, sentencing you to 20 years in the Department of Corrections as a minimum mandatory; that sentence to run concurrent to the sentence in Count IV.   So that's a total of 60 years as a minimum mandatory.

Ex. C at 229.   The original written sentence reflected the 20-year sentence on Count V as running concurrent with the sentence imposed on Count IV. Ex. A at 77.   Evidently, the Clerk of Court subsequently notified the judge regarding the ambiguity, and the judge entered an order, *sua sponte*, clarifying the sentence and correcting the written sentence to reflect that the sentence on Count V run consecutive to the sentence on Count IV as the court intended to impose a 60-year prison sentence.   *Id.* at 91-92. The amended sentence was entered September 19, 2011, *nunc pro tunc* August 25, 2011.   *Id.* at 97-103.

Thereafter, Washington, through counsel, filed a Motion to Correct

Sentence pursuant to Florida Rule of Criminal Procedure 3.800(b)(2).    Ex.

H at 1-5.    In this motion, Washington argued the trial court, without notice

to the parties and after he had begun serving his sentence, had amended

the judgment and sentence to reflect that the sentence on Count V was to

run consecutively to the sentence on Count IV.    *Id*. at 2.    Washington

argued the court had acted in violation of the double jeopardy provisions of

the U.S. and Florida Constitutions, specifically citing Ashley v. State, 850

So. 2d 1265 (Fla. 2003).    *Id*. at 2-3.    By order rendered May 22, 2012, the

state trial court denied Washington's motion to correct sentence, making

the following findings:

> 2.    The record reflects that during the oral pronouncement in this case, this Court imposed "a total [sentence] of 60 years [imprisonment] as a minimum mandatory."    *See* Sentencing Transcript at 8 (lines 15-16). That sentence is also reflected on the scoresheet.    *See* Scoresheet.    After sentencing, the Clerk of Court notified this Court that during the oral pronouncement of the sentence on count V, the Court stated that the sentence was ordered to run concurrent with rather than consecutive to the sentence on count IV.    It was the intent of this Court, as reflected in the record, to impose a total sentence of 60 years imprisonment, with three consecutive minimum mandatory sentences of 20 years imprisonment.

> 3.    Given the ambiguous nature of the oral pronouncement, this Court entered an order to clarify the sentence which was imposed and to correct the written sentence.    *See* Duncan v. State, 59 So. 3d 1197, 1199 (Fla.

5th DCA 2011) ("A sentencing court may . . . clarify an
ambiguous sentence"); Chapman v. State, 14 So. 3d 273, 274
(Fla. 5th DCA 2009) ("Where there is an ambiguity in the oral
pronouncement, the proper remedy is for the trial court to clarify
the sentence imposed"); Franklin v. State, 969 So. 2d 399, 400-
401 (Fla. 4th DCA 2007).

    4.    Furthermore, "the Constitution does not require that
sentencing should be a game in which a wrong move by the
judge means immunity for the prisoner."   Dunbar v. State, 37
Fla. L. Weekly S329 (Fla. May 3, 2012) (quoting Harris v. State,
645 So. 2d 386, 388 (Fla. 1994)).   Here, this Court was clear at
sentencing that the total sentence which was imposed was a
minimum mandatory of 60 years imprisonment.   The amended
sentence reflects that intent.

Id. at 10-12.

The transcript of the sentencing hearing, quoted above, reasonably

supports the findings that the judge's oral pronouncement was ambiguous

and that the judge intended to impose a total sentence of 60 years.   Ex. C

at 229.   The scoresheet, signed by the judge, also supports those findings.

Ex. A at 85.   "Where there is an ambiguity in the oral pronouncement, the

proper remedy is for the trial court to clarify the sentence imposed."

Chapman, 14 So. 3d at 274 (distinguishing Ashley as it involved an

unambiguous sentence).   See, e.g., Franklin, 969 So. 2d at 401 (holding

where record demonstrated that during oral pronouncement of sentence,

court made inconsistent statements, case should be remanded to clarify

sentence imposed).    That is what occurred here – the sentencing judge made inconsistent statements during the oral pronouncement of the sentence and, once the ambiguity was pointed out, the judge clarified and corrected the sentence.

Petitioner Washington has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.    *See* 28 U.S.C. § 2254(d)(1)-(2).    Accordingly, this ground should be denied.

### Ground 3:   IAC – Double Jeopardy

In his third ground, Petitioner Washington asserts his counsel provided ineffective assistance by not moving to strike the information based on double jeopardy violations.    ECF No. 5 at 15.    Respondent indicates Washington exhausted this claim by presenting it as the first ground in his Rule 3.850 motion.    Ex. N at 4-6; *see* ECF No. 17 at 31. The state post-conviction trial court summarily denied the ground, making the following findings:

> As to Ground One, Defendant alleges that trial counsel
> was ineffective for allowing Defendant to enter a not guilty plea
> to counts I, II, II[I], and IV of the State's Fourth Amended
> Information and failing to move to strike counts I, II, III, and IV

based on the prohibition against double jeopardy.   According to Defendant counts I, II, III, and IV are "different versions of the same alleged criminal conduct," thus counsel should have moved to dismiss two of the charges as duplicative.

"Double jeopardy concerns require only that the trial judge filter out multiple punishments at the end of the trial, not at the beginning." Claps v. State, 971 So. 2d 131, 134 (Fla. 2d DCA 2007); see also State v. Sholl, 18 So. 3d 1158, 1162 (Fla. 1st DCA 2009).   "The Double Jeopardy Clauses of the United States and Florida Constitutions provide a defendant with a shield from punishment; conversely, they do not provide a defendant with a sword to wield against the State's executive decisions." Claps, 971 So. 2d at 135; see also Ohio v. Johnson, 467 U.S. 493, 502 . . . (1984) (observing that a defendant "should not be entitled to use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution" on remaining charges after being found guilty of other related offenses).   "To this end, double jeopardy protections may not be extended to an earlier stage of the proceeding, such as the filing of the information or jury selection." Sholl, 18 So. 3d at 1162.   "Otherwise, the trial court would be 'usurping the State's discretion to make strategic decisions about charging alleged criminal activity.'" Id. (quoting Claps, 971 So. 2d at 134-35).   For this reason, Defendant's double jeopardy argument would have been premature and an improper basis for a motion to dismiss or motion to strike.   Thus, Defendant fails to show either error by counsel or prejudice.   Accordingly, the claim raised is without merit.

Ex. N at 40-41.   On appeal, the First DCA affirmed without a written opinion.   This constitutes a ruling on the merits and is entitled to AEDPA deference.   See 28 U.S.C. § 2254(d); Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has

denied relief, it may be presumed that the state court adjudicated the claim

on the merits in the absence of any indication or state-law procedural

principles to the contrary.")   A review of the record supports the state

courts' determination.   *See* <u>Wilson v. Sellers</u>, -- U.S. --, 138 S. Ct. 1188,

1192 (2018) ("We hold that the federal court should 'look through' the

unexplained decision to the last related state-court decision that does

provide a relevant rationale.   It should then presume that the unexplained

decision adopted the same reasoning.").

As the state post-conviction trial court indicated, "[d]ouble jeopardy

concerns require only that the trial judge filter out multiple punishments at

the end of trial, not at the beginning."   <u>Claps</u>, 971 So. 2d at 135.   The

<u>Claps</u> court explained:

> The Double Jeopardy Clauses of the United States and Florida
> Constitutions provide a defendant with a shield from
> punishment; conversely, they do not provide a defendant with a
> sword to wield against the State's executive decisions.   *See*
> <u>Ohio v. Johnson</u>, 467 U.S. 493 . . . (1984) (observing that a
> defendant "should not be entitled to use the Double Jeopardy
> Clause as a sword to prevent the State from completing its
> prosecution" on remaining charges after being found guilty of
> other related offenses).   Allowing the jury to exercise its fact-
> finding function to decide which crime – or crimes – may have
> been committed, even when based on the same facts, is a
> classic and appropriate function of the jury trial system, just as
> a court's determination as a matter of law which guilty verdicts
> will be precluded from adjudication and sentencing on double

jeopardy grounds is a similarly appropriate function of the judiciary.

*Id*.   The First DCA has referenced <u>Claps</u> and indicated that, in such cases, a trial court should not consider a double jeopardy claim until sentencing, thus a pretrial argument for dismissal on the basis of double jeopardy is premature.   *See* <u>State v. Sholl</u>, 18 So. 3d 1158, 1162 (Fla. 1st DCA 2009) ("[D]ouble jeopardy protections may not be extended to an earlier stage of the proceeding, such as the filing of the information or jury selection."). Given this, the state court did not unreasonably conclude Washington had not shown error by his trial counsel or prejudice.

Petitioner Washington has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

### <u>Ground 4</u>:   IAC – Cumulative/Multiple Instances

In his fourth ground, Petitioner Washington asserts he was denied effective assistance of counsel "based on cumulative effect of counsel deficient performances."   ECF No. 5 at 6; *see* ECF No. 24 at 5-7 (in reply, Washington seems only to assert claim of cumulative IAC).   To the extent

Washington asserts here a claim of cumulative error based on multiple alleged instances of IAC, such claim should be denied as the Eleventh Circuit has rejected an argument of cumulative error in the context of IAC claims.   *See* <u>Forrest v. Fla. Dep't of Corr.</u>, 342 F. App'x 560, 565 (11th Cir. 2009) (explaining that "[t]he Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim" but "the Supreme Court has held, in the context of an ineffective assistance of counsel claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt'" (quoting <u>United States v. Cronic</u>, 466 U.S. 648, 659 n.26 (1984))).

In appears, however, that Washington actually raises six individual subclaims in this ground:

(a)    IAC – Failure to Depose Co-Defendant Mann

(b)    IAC – Failure to File Motion in Limine/Co-Defendant

(c)    IAC – Failure to File Motion in Limine/Printed Pictures

(d)    IAC – Failure to Make Adequate JOA Motion

(e)    IAC – Failure to File Timely Motion for New Trial

(f)    IAC – Failure to Object During Jury Instructions

ECF No. 5 at 6-7; *but cf*. ECF No. 24 at 5-7.   He raised these claims in the

second ground of his Rule 3.850 motion.   Ex. N at 7-18.   Ultimately, the

state post-conviction court summarily denied relief on all, making detailed

findings regarding each subclaim.   Each is addressed separately below.

### (a)   IAC – Failure to Depose Co-Defendant Mann

The state post-conviction trial court denied this claim, making the

following findings:

> As to Ground Two(a), Defendant alleges that trial counsel was ineffective for failing to depose co-defendant Jorey Mann with Defendant present.   According to Defendant, had counsel deposed Mr. Mann with him present, the outcome of the trial would have been different.

> First, defendants are "not entitled to be present during a discovery deposition pursuant to rule 3.220(h)." Blanton v. State, 978 So. 2d 149, 155 (Fla. 2008); *see also* State v. Lopez, 974 So. 2d 340, 347 (Fla. 2008).   Thus, even if counsel had deposed Mr. Mann, Defendant did not have a right to be present.

> Second, Mr. Mann had given a recorded statement to law enforcement, as well as making recorded statements during his plea colloquy.   *See* Trial Transcript at 148 (lines 6-25) – 149 (lines 1-16), 153 (lines 3-7), 168 (lines 14-25) – 169 (line 1), 412 (lines 13-25) – 413 (lines 1-13), 414 (lines 4-8), 416 (lines 11-25) – 437 (lines 1-22), 439 (lines 7-14), 441 (lines 11-25) – 446 (lines 1-15).   Thus, counsel knew what Mr. Mann would testify to at trial.

> Third, there is no indication that counsel was surprised at any point during Mr. Mann's trial testimony.   *See* Trial

Transcript at 121-172, 412-446.

      For these reasons, Defendant fails to show either error by counsel or prejudice.   Accordingly, the claim raised is without merit.

Ex. N at 41-42.   On appeal, the First DCA affirmed the denial of this claim. This constitutes an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d).   *See* Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").   A review of the record supports the state courts' determination.   *See* Wilson, 138 S. Ct. at 1192.

      In particular, in his federal petition, Washington asserts an IAC claim in this subpart based only on counsel's failure to depose Mann, not the failure to depose him with Washington present.   *See* ECF No. 5 at 6.   As the state post-conviction trial court found, because Mann had given a recorded statement to law enforcement and also made statements in open court during his plea colloquy, which were recorded, defense counsel knew what Mann would say in his trial testimony.   *See* Ex. D at 148-49, 153, 168-69; Ex. F 412-46.   Further, as the court also found, nothing indicates

that anything in Mann's testimony surprised the defense.   *See* Ex. D at
121-72; Ex. F at 412-46.

Washington has not shown that the state court's rejection of this
claim involved an unreasonable application of clearly established federal
law or that it was based on an unreasonable determination of the facts.
*See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this claim should be denied.

### (b)   IAC – Failure to File Motion in Limine/Co-Defendant

The state post-conviction trial court denied this claim, making the
following findings:

> As to Ground Two(b), Defendant alleges that trial counsel
> was ineffective for failing to file a motion in limine to prevent the
> State from calling his co-defendant as a witness at trial.   The
> fact that Defendant's co-defendant Jorey Mann had already
> pled to the charges was not a basis to exclude him as a State
> witness at trial.   Mr. Mann's testimony was relevant to the
> determination of whether or not Defendant committed the
> charged offenses.   *See* § 90.401, Fla. Stat. (2011) ("Relevant
> evidence is evidence tending to prove or disprove a material
> fact.").   "All relevant evidence is admissible, except as provided
> by law."   § 90.402, Fla. Stat. (2011).   The fact that Mr. Mann[]
> pled to the same criminal offense as Defendant and agreed to
> testify truthfully against Defendant is prejudicial to Defendant is
> not dispositive to its admissibility.   "Relevant evidence is
> inherently prejudicial; however it is only unfair prejudice,
> substantially outweighing probative value, which permits
> exclusion of relevant matters."   <u>State v. Blackwell</u>, 787 So. 2d
> 963, 965 (Fla. 1st DCA 2001) (quoting <u>State v. Andres</u>, 552 So.
> 2d 1151, 1153 (Fla. 3d DCA 1989)).   Here, the probative value
> of Mr. Mann's testimony that Defendant committed the charged

offenses with him was [not] "substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence."  § 90.403, Fla. Stat. (2011).   Thus, it was admissible.   Because the testimony was admissible, Defendant fails to show either error by counsel or prejudice.   Accordingly, the claim raised is without merit.

Ex. N at 42.   On appeal, the First DCA affirmed the denial of this claim. This constitutes an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d).   *See* Richter, 562 U.S. at 99.   A review of the record supports the state courts' determination.   *See* Wilson, 138 S. Ct. at 1192.

In particular, as the state post-conviction trial court explained, that Mann had entered a plea to the same charges did not constitute a basis to exclude him as a witness during Washington's trial.   Mann's testimony was relevant and admissible.   *See* §§ 90.401, .402, Fla. Stat. (2010). Because defense counsel did not have a basis to move to exclude Mann's testimony, counsel did not err in not filing a motion in limine as alleged by Washington.

Washington has not shown that the state court's rejection of this claim involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this claim should be denied.

### (c)  IAC – Failure to File Motion in Limine/Printed Pictures

The state post-conviction trial court denied this claim, making the

following findings:

> As to Ground Two(c), Defendant alleges that trial counsel
> was ineffective for failing to file a motion in limine to prevent the
> State from "presenting harmful hearsay testimony . . . from the
> alleged victims concerning how their [non-testifying] son
> identified the pictures of [Defendant] and codefendant Mann on
> the internet."   During trial, both the victims testified that their
> son, Drew, printed off the defendants' pictures off the internet
> (from a news website) and showed the pictures to them.   *See*
> Trial Transcript at 96 (lines 2-10), 98 (lines 18-25) – 99 (lines 1-
> 25), 116 (lines 21-25) – 119 (lines 1-8).   According to
> Defendant, the victim's son's act of printing off his and his co-
> defendant's pictures [is] "hearsay."   However, the reason why
> he printed the pictures was because his mother, who
> recognized them as the perpetrators, told him to do so.   *Id*. at
> 117 (lines 11-25) – 118 (lines 1-25).   Thus, his act of printing
> the pictures was not hearsay.   For this reason, Defendant fails
> to show either error by counsel or prejudice.   Accordingly, the
> claim raised is without merit.

Ex. N at 43.   On appeal, the First DCA affirmed the denial of this claim.

This constitutes an adjudication on the merits entitled to deference under

28 U.S.C. § 2254(d).   *See* Richter, 562 U.S. at 99.   A review of the record

supports the state courts' determination.   *See* Wilson, 138 S. Ct. at 1192.

In particular, as the state post-conviction trial court found, during the

trial, both victims testified their son had printed the pictures of Washington

and Mann from a news website.   *See* Ex. D at 96-99; 116-19.   The female

Case 1:18-cv-00001-MW-CAS    Document 25    Filed 04/08/19    Page 35 of 53

Page **35** of **53**

victim, Meena R. Narielwala, testified she recognized Washington on the news and, after she saw the news, she asked her son to print the pictures from the internet.   Ex. D at 118.   Both victims also testified that, although the perpetrators covered their faces during the crime, the victims recognized them as regular customers by their body shapes and height, and the way they walked.   Ex. D at 96-98; 112, 116-17.   Regardless, the record supports the state court's determination that, contrary to Washington's allegation, the victims' son's act of printing the perpetrators' pictures from the internet did not constitute hearsay and, thus, defense counsel did not perform deficiently in not filing a motion in limine to prevent the State from presenting this testimony.

Washington has not shown that the state court's rejection of this claim involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this claim should be denied.

### (d)   IAC – Failure to Make Adequate JOA Motion
### and
### (e)   IAC – Failure to File Timely Motion for New Trial

The state post-conviction trial court summarily denied these claims, explaining that Washington was essentially challenging the sufficiency of

the evidence underlying his conviction, which is not appropriate in a Rule 3.850 motion as such could or should have been raised on direct appeal. Ex. N at 43-44.   On appeal, the First DCA reversed and remanded for record attachments or additional proceedings.   On remand, the state post-conviction trial court again summarily denied the claims, making the following findings:

> As to both grounds, the record reflects that there was sufficient evidence presented at trial as to Count III (Attempted Felony Murder (Actual Possession of Firearm with Discharge) (Meena Narielwala)) for that count to proceed to the jury; and, for the jury to find Defendant guilty of that count beyond a reasonable doubt.   First, Ms. Narielwala's husband indicated that both he and his wife were standing together behind the register when Defendant shot at them.   *See* Trial Transcript at 84 (lines 17-21), 86 (lines 8-11).   Second, Ms. Narielwala, the victim in Count III, testified at trial that "He shot at us two – us."   *Id*. at 111 (lines 16-18).   Third, Defendant's co-defendant, Jorey Mann, testified that both Mr. and Mrs. Narielwala were behind the store counter when Defendant fired the gun at them.   *Id*. at 137 (lines 20-25) – 138 (lines 1-12).   Fourth, there was surveillance video of the attempted robbery which was played during trial.   The video showed the attempted robbery, and the shooting, from three different angles.   *Id*. at 535 (lines 22-25) – 538 (lines 1-25).   Thus, had counsel made a more precise motion for judgment of acquittal, and actually made a motion for new trial as to Count III, the motions would have been denied because there was sufficient evidence supporting Defendant's guilt as to that count.   Accordingly the claim[s] raised [are] without merit.

Ex. S at 216-17.   On appeal, the First DCA affirmed without a written

opinion.    This constitutes an adjudication on the merits entitled to

deference under 28 U.S.C. § 2254(d).    *See* <u>Richter</u>, 562 U.S. at 99.    A

review of the record supports the state courts' determination.    *See* <u>Wilson</u>,

138 S. Ct. at 1192.

In particular, the record supports the state post-conviction trial court's

finding that the State presented sufficient evidence at trial on Count III –

attempted felony murder, with actual possession and discharge of a

firearm, involving victim Meena Narielwala – for that count to go to the jury

and for the jury to find Washington guilty.    As the court explained,

Mr. Narielwala testified that both he and his wife were standing behind the

cash register when the men entered the store and Washington, "the skinny

guy," shot at them while the "the fatter man," Jorey Mann, tried to get the

money from behind the counter, by leaning over the register and trying to

reach underneath, where they kept the box containing the bigger bills.    Ex.

D at 84-88.    The victim testified the skinny guy had a gun, *id*. at 110, and

"[h]e shot at us two – us," *id*. at 111.    She testified the skinny guy was

shooting at them while the heavier guy was trying to reach the money box.

*Id*. at 114-15.    Jorey Mann testified that both store owners, Mr. and Mrs.

Narielwala, were behind the store counter when Washington fired the gun,

while Mann reached over the counter to grab the money box.   *Id*. at 137-

38.   Surveillance video from the store was played during the trial, showing

the shooting from three different angles.   *Id*. at 91-96, 139; *see* Ex. E at

535-38.   Mann identified himself and Washington on the video.   Ex. D at

139-40.   Thus, as the court concluded, even if defense counsel had made

a more specific motion for JOA and a motion for new trial on Count III, the

motions would have been denied because the State had presented

sufficient evidence to support a finding of guilt on that count.   Accordingly,

Washington did not show prejudice resulting from any error by counsel.

Washington has not shown that the state court's rejection of this

claim involved an unreasonable application of clearly established federal

law or that it was based on an unreasonable determination of the facts.

*See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this claim should be denied.

### (f)   IAC – Failure to Object During Jury Instructions

The state post-conviction trial court denied this claim, making the

following findings:

> As to Ground Two(f), Defendant alleges that trial counsel
> was ineffective for failing to object to the jury instructions.
> According to Defendant, the trial court erred in instructing the
> jury on Counts III and IV when it failed to define what the
> intentional act that Defendant committed which was not an
> essential element of Robbery.   *See* Trial Transcript at 506

(lines 23-25) – 507 (lines 1-3); Jury Instructions (counts III and
IV).   Defendant contends that discharging the firearm at the
victims cannot be that intentional act because it is an essential
element of Robbery (i.e., "force, violence, assault, or putting in
fear was used in the course of the taking").

 The jury instruction that was given during Defendant's trial
is the standard jury instruction for Attempted Felony Murder.
*See* Trial Transcript at 506 (lines 23-25) – 507 (lines 1-3); Jury
Instructions (counts III and IV); *see also* Fla. Std. Jury Instr.
(Crim.) 6.3.   "[T]rial counsel's failure to object to standard jury
instructions that have not been invalidated by this Court does
not render counsel's performance deficient."   Thompson v.
State, 759 So. 2d 650, 665 (Fla. 2000).   This Court additionally
notes that discharging a firearm is not an essential element of
the crime of Robbery.   For these reasons, Defendant fails to
show either error by counsel or prejudice.   Accordingly, the
claim raised is without merit.

Ex. N at 44-45.   On appeal, the First DCA affirmed the denial of this claim.

This constitutes an adjudication on the merits entitled to deference under

28 U.S.C. § 2254(d).   *See* Richter, 562 U.S. at 99.   A review of the record

supports the state courts' determination.   *See* Wilson, 138 S. Ct. at 1192.

 The record supports the state court rulings.   As the state post-

conviction court explained, the jury instruction the trial court gave on

Counts III and IV is the standard jury instruction for Attempted Felony

Murder.   *Compare* Ex. F at 506-07 (transcript of court instructing jury) *and*

Ex. A at 51-52 (written jury instructions) *with* Fla. Std. Jury Instr. (Crim.)

6.3.   The Florida Supreme Court has held that "trial counsel's failure to

object to standard jury instructions that have not been invalidated by this

Court does not render counsel's performance deficient."   Thompson v.

State, 759 So. 2d 650, 665 (Fla. 2000); see Downs v. State, 740 So. 2d

506, 518 (Fla. 1999).   Further, as the state post-conviction trial court

noted, contrary to Washington's contention, discharging a firearm is not an

essential element of robbery.   See §§ 812.13(1) (providing that "robbery"

means "the taking of money or other property which may be the subject of

larceny from the person or custody of another, with intent to either

permanently or temporarily deprive the person or the owner of the money

or other property, when in the course of the taking there is the use of force,

violence, assault, or putting in fear"), (2)(a) (providing that "[i]f in the course

of committing the robbery the offender carried a firearm or other deadly

weapon, then the robbery is a felony of the first degree"), Fla. Stat. (2010).

Based on the foregoing, Petitioner Washington has not shown that

the state courts' rejection of this claim involved an unreasonable application

of clearly established federal law or that it was based on an unreasonable

determination of the facts.   See 28 U.S.C. § 2254(d)(1)-(2).   Accordingly,

this claim should be denied.

### Ground 5:   IAC – Prosecutorial Misconduct

In his fifth ground, Petitioner Washington asserts that defense

counsel provided ineffective assistance by not objecting or moving for a

mistrial based on alleged prosecutorial misconduct.    ECF No. 5 at 8.

Respondent indicates Washington exhausted this claim by presenting it as

the third ground in his Rule 3.850 motion.    Ex. N at 19-24; *see* ECF No. 17

at 45.    The state post-conviction trial court summarily denied the ground,

making the following findings:

> As to Ground Three, Defendant alleges that trial counsel
> was ineffective for failing to timely object and move for a mistrial
> based on the State's closing argument.    According to
> Defendant, the State made improper arguments during its
> closing.    *See* Trial Transcript at 456 (lines 6-8), 459 (lines 5-9),
> 461 (lines 21-24), 468 (lines 5-6), 475 (lines 18-20), 489 (lines
> 11-20).
>
> "Wide latitude is permitted in arguing to a jury."
> Breedlove v. State, 413 So. 2d 1, 8 (Fla. 1982).    Here, "the
> prosecutor [was] merely submitting to the jury a conclusion that
> he or she [was] arguing [could] be drawn from the evidence."
> Davis v. State, 698 So. 2d 1182, 1190 (Fla. 1997).    The State
> is "allowed to argue reasonable inferences from the evidence
> and to argue credibility of witnesses or any other relevant issue
> so long as the argument is based on the evidence."    Miller v.
> State, 926 So. 2d 1243, 1254-55 (Fla. 2006).    None of the
> argument which Defendant cites to was improper.
>
> Defendant also argues that counsel should have objected
> when the State allegedly improperly impeached its own witness
> (Bria Sterling).    *See* Trial Transcript at 211-16.    During her
> testimony, Ms. Sterling, Defendant's girlfriend, denied knowing
> Defendant's phone number at the time of the offense; and,

denied making multiple statements to law enforcement
regarding Defendant's appearance and actions on the date of
the offense.  *Id.*  Because Ms. Sterling denied knowledge of
those matters, it was not improper for the State to impeach her
with her prior inconsistent statements.  *See* Wolcoff v. State,
576 So. 2d 726, 726 (Fla. 4th DCA 1991) ("[I]f a party calls a
witness who proves 'adverse' under section 90.608(2), Florida
Statutes (1987), the party calling the witness may impeach him
by prior inconsistent statements or by direct evidence.").  For
these reasons, Defendant fails to show either error by counsel
or prejudice.  Accordingly, the claim raised is without merit.

Ex. N at 45-46.  On appeal, the First DCA affirmed without a written

opinion.  This constitutes a ruling on the merits and is entitled to AEDPA

deference.  *See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

The state court record supports the post-conviction court's finding

that the prosecutor's argument was not improper.  In particular,

Washington points to the following statements, in bold, made by the

prosecutor during closing argument:

Attempted first-degree murder has three elements.  If
you remember, elements are like the definitions of the crimes
it's.  What we have to prove.

The first element is the defendant committed an act
intending to cause death beyond just thinking or talking about it.
What that means is he didn't just – he didn't just say, hey, we
should go kill someone.  There was an act.

In this case, certainly – You've seen the video.  The man
in the red or purply colored shirt with the long hair has the gun
and points it, and he shoots it twice.  You have that video.

You can watch that.   **There is no doubt that shooting the gun is an act intended to cause death.   It's not just thinking about it.**

. . . .

Look at the first shot.   And then a second shot is also fired here.   This is the other angle I was talking about.   You can see the muzzle flash around the gun and how close they are to the Narielwalas when the shooting is done.   They are as close as the court reporter is to you in the jury box when Phillip Washington pulls that gun and shoots.

**Now, obviously, the only part about attempt being that they failed; they just missed their shots.   That's the issue of the third element of attempt:   They would have succeeded but he failed.   That is, he missed, it's not as accurate, or the Narielwalas ducked the weapons.**

. . . .

**And lastly, the third lesser-included is attempted voluntary manslaughter.   And all that is is that the defendant intentionally commits an act that would cause the death of a victim but failed to do so.**

. . . .

And you're going to have to evaluate his credibility.   And I'm sure we'll talk again about that.   But I'm going to submit to you that Jorey Mann was friends with Phillip Washington.   He cared about Phillip Washington.   If you remember, yesterday he got emotional at the fact he had to testify against him.   He doesn't want to.   He's not doing this to some stranger just to narc him out and get off easy.

**I'd also suggest to you that there's other evidence that supports Jorey Mann's story.   And despite any**

**impeachment we heard about some inconsistencies**, ultimately I think my last two questions to him were the same: Did you ever say you didn't do it?   Did you ever say Phillip Washington didn't do it?

Certainly, Jorey Mann was in that store all the time.   He told you.   He could have easily told the police, hey, I'm in that store every day, twice a day.   I touched the bucket one time. My fingerprint doesn't mean anything.

He told them about his involvement from the beginning. He has never denied his involvement and he has never denied Phillip Washington's involvement.

The description, the physical description, is the next one. Tall skinny, long black hair, distinctive dreads.

And we took these pictures.   I think it's important to look at them.   I know these are small, because these are copies of the video, but if you want to watch the video again, I encourage you. . . .

. . . .

Phillip Washington has to tell the police he is not with Jorey Mann.   He knows Jorey Mann has already admitted his involvement in this crime.   He knows Jorey Mann has already . . . been arrested.   He cannot put himself with Jorey Mann on the day of the robbery.

So he has to distance himself, despite the other evidence and despite what the witness testimony was.

Lastly, he's under the bed.   And I don't mean to be deliberate about it with the picture here but, ladies and gentlemen, he is hiding under the bed when the police come to the door.

At this point he's not a suspect, at least as far as he knows.   He hasn't been interviewed by the police at this point. They're coming to talk to him at his girlfriend's mom's house. And he's hiding under a bed when they knock on the door.   He has gone to ground.

Ladies and gentlemen, I think that is heavy credible evidence.   **If he had done nothing wrong, if he had no involvement, why does he hide under the bed when the police come in?**

Ex. at F 455-56, 458-59, 461, 467-68, 475; *see* Ex. N at 20-22.

Washington also takes issue with comments by the prosecutor during

rebuttal:

I ask you this, ladies and gentlemen:   Who is more credible?   Bennie Smith, detective with almost 30 years experience with the Gainesville Police Department, or Bria Starling, an 18-year-old girl who dated this defendant for three years, is still in love with him?

Benny Smith has no axe to grind against Phillip Washington.   He has no motive to fabricate or say I don't remember or obfuscate.   Bria Starling does.   I think her first statements are far more credible than her latter ones.

Ex. E at 489; *see* Ex. N at 21.

In Florida, both the State and the defense have wide latitude in

closing arguments.   *See, e.g.*, Ford v. State, 802 So. 2d 1121, 1129 (Fla.

2001).   As the state post-conviction trial court explained, the prosecutor is

"allowed to argue reasonable inferences form the evidence and to argue

credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." Miller, 926 So. 2d at 1254-55.   Review of the comments, quoted above, does not indicate the prosecutor's statements rose to such a level as to result in an unfair trial or deprivation of due process. *See, e.g.*, Darden v. Wainwright, 477 U.S. 168, 181 (1986) (holding that prosecutor's comments "undoubtedly were improper," but that was not enough for habeas corpus relief as the question was whether the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process").

In addition, in this ground, Washington asserts defense counsel should have objected when the prosecutor improperly impeached its own State witness, Bria Sterling, Washington's girlfriend.   *See* Ex. N at 22-23. As the state post-conviction trial court found, however, during her trial testimony, Sterling denied knowing or remembering Washington's phone number at the time of the offense and also denied, or could not remember, making multiple statements to law enforcement regarding Washington's appearance and actions on the date of the offense.   Ex. E at 208-16. Because she denied knowledge of these matters, the prosecutor did not act improperly by impeaching her with her prior inconsistent statements.   *See,*

*e.g.,* <u>Wolcoff</u>, 576 So. 2d at 726 ("[I]f a party calls a witness who proves 'adverse' under section 90.608(2), Florida Statutes (1987), the party calling the witness may impeach him by prior inconsistent statements or by direct evidence."). Accordingly, the state court did not unreasonable conclude that defense counsel did not perform ineffectively by not objecting.

Based on the foregoing, Petitioner Washington has not shown that the state courts' rejection of these claims involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). These claims should be denied.

## <u>Ground 6</u>: IAC – Double Jeopardy

In his sixth ground, Petitioner Washington asserts his attorney provided ineffective assistance by not moving for a mistrial upon discovering the double jeopardy violations. ECF No. 5 at 9. Respondent indicates Washington exhausted this claim by presenting it as the fourth ground in his Rule 3.850 motion. Ex. N at 24-28; *see* ECF No. 17 at 48. The state post-conviction trial court summarily denied the ground, making the following findings:

> As to Ground Four, Defendant alleges that trial counsel was ineffective for failing "to move the Court for a mistrial based

on . . . double jeopardy violations."    The majority of Defendant's factual claim is not supported by the record.    First, Defendant was not convicted of counts I, II, III, and IV. Defendant was only convicted of and sentenced on counts III, IV, and V.    *See* Judgment and Sentence.    Second, it did not violate the prohibition against double jeopardy for Defendant to be tried on all five counts.    "Double jeopardy concerns require only that the trial judge filter out multiple punishments at the end of the trial, not at the beginning."    Claps, 971 So. 2d at 134; *see also* Sholl, 18 So. 3d at 1162.    "The Double Jeopardy Clauses of the United States and Florida Constitutions provide a defendant with a shield from punishment; conversely, they do not provide a defendant with a sword to wield against the State's executive decisions."    Claps, 971 So. 2d at 135; *see also* Ohio v. Johnson, 467 U.S. 493, 502 . . . (1984) (observing that a defendant "should not be entitled to use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution" on remaining charges after being found guilty of other related offenses).    "To this end, double jeopardy protections may not be extended to an earlier stage of the proceeding, such as the filing of the information or jury selection."    Sholl, 18 So. 3d at 1162.    "Otherwise, the trial court would be 'usurping the State's discretion to make strategic decisions about charging alleged criminal activity.'" *Id*. (quoting Claps, 971 So. 2d at 134-35).    Thus, had counsel filed a motion for new trial on the basis alleged under this ground, the motion would have been denied.    For these reasons, Defendant fails to show either error by counsel or prejudice.    Accordingly, the claim raised is without merit.

Ex. N at 46-47.    On appeal, the First DCA affirmed without a written

opinion.    This constitutes a ruling on the merits and is entitled to AEDPA

deference.    *See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

    The state court record supports the post-conviction court's findings.

In particular, Washington was convicted and sentenced only on Counts III, IV, and V, not Counts I and II.   Ex. N at 46.   As the state court explained, that Washington was tried on all five counts did not violate the constitutional guarantee against double jeopardy as "[d]ouble jeopardy concerns require only that the trial judge filter out multiple punishments at the end of trial, not at the beginning."   <u>Claps</u>, 971 So. 2d at 135.   That is exactly what occurred in this case.   Accordingly, the state court did not unreasonably conclude Washington had not shown error by his trial counsel or prejudice.

Petitioner Washington has not shown that the state courts' rejection of this claim involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).   This ground should be denied.

<u>**Ground 7**</u>:   **Trial Court Error – Jury Instruction**

In his seventh ground, Petitioner Washington asserts the trial court failed to instruct the jury on an essential element of attempted felony murder, thus denying him due process.   ECF No. 5 at 11.   Respondent argues this ground was not properly raised and exhausted in state court, explaining that although Washington raised it in his Rule 3.850 motion, the

state trial court denied it as procedurally barred without addressing the

merits.    ECF No. 17 at 51.

Washington raised the claim in the fifth ground of his Rule 3.850

motion.    *See* Ex. N at 29-31.    The state post-conviction trial court

summarily denied the claim, making the following findings:

> As to Ground Five, Defendant alleges that "[t]he trial court committed fundamental error when the trial court failed to instruct the jury it must consider the disputed essential element of Attempted Felony Murder, to wit:    discharging of the firearm constituted an intentional act that is not an essential element of Robbery."    The claim raised is procedurally barred.    *See* Johnson v. State, 593 So. 2d 206, 208 (Fla. 1992) ("[i]ssues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack").    Motions filed under rule 3.850 "cannot be utilized for a second appeal."    Jones v. State, 446 So. 2d 1059, 1061-62 (Fla. 1984).

Ex. N at 47.    On appeal, the First DCA affirmed without a written opinion.

This constitutes an adjudication on the merits entitled to deference under

28 U.S.C. § 2254(d).    *See* Richter, 562 U.S. at 99.    A review of the record

supports the state courts' determination.    *See* Wilson, 138 S. Ct. at 1192.

The state post-conviction court found this claim not cognizable in a

Rule 3.850 proceeding.    This finding constitutes an independent and

adequate state ground that precludes federal habeas consideration of the

claim.    *See, e.g.*, LeCroy v. Sec'y, Fla. Dep't of Corr., 421 F.3d 1237, 1260

(11th Cir. 2005); *see also, e.g.*, <u>Harmon v. Barton</u>, 894 F.2d 1268, 1273 (11th Cir. 1990) (concluding that state appellate court's "per curiam affirmance of the trial court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal courts").

Moreover, as explained the analysis of Ground 4(f), *supra*, the trial court gave the standard jury instructions for Counts III and IV, which are presumed correct.   As also explained in that analysis, *supra*, discharging a firearm is not an essential element of the crime of robbery.

Petitioner Washington has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

## Conclusion

Petitioner Phillip Washington is not entitled to federal habeas relief. The amended § 2254 petition (ECF No. 5) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United

States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

### Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the

amended § 2254 petition (ECF No. 5).   It is further **RECOMMENDED** that

a certificate of appealability be **DENIED** and that leave to appeal in forma

pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on April 8, 2019.

**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**